UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RIENEKE E. FARROW                          CIVIL ACTION

VERSUS                                     NO. 15-7148

AMMARI OF LOUISIANA, LTD.                  SECTION "B"(3)

ORDER AND REASONS

Before the Court are several motions filed by the parties.

The first is "Defendant's Motion for Partial Summary Judgment." Rec. Doc. 46. Plaintiff timely filed a memorandum in opposition. Rec. Doc. 86. Defendant then requested (Rec. Doc. 93), and was granted (Rec. Doc. 95), leave to file a reply memorandum (Rec. Doc. 96).

The second is Plaintiff's "Motion for Equitable Tolling of Statute of Limitations." Rec. Doc. 47. Defendant timely filed a memorandum in response. Rec. Doc. 67. Plaintiff then requested (Rec. Doc. 69), and was granted (Rec. Doc. 77), leave to file a reply memorandum (Rec. Doc. 78).

The third is "Defendant's Motion for Protective Order." Rec. Doc. 61. Plaintiff timely filed a memorandum in response. Rec. Doc. 80. Defendant then requested (Rec. Doc. 83), and was granted (Rec. Doc. 84), leave to file a reply memorandum (Rec. Doc. 85).

For the reasons discussed below,

**IT IS ORDERED** that Defendant's motion for partial summary judgment (Rec. Doc. 46) is **GRANTED IN PART.**

1

**IT IS FURTHER ORDERED** that Plaintiff's motion to equitably toll the statute of limitations (Rec. Doc. 47) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's motion for a protective order (Rec. Doc. 61) is **GRANTED IN PART.**

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As previously discussed, this case arises out of Rieneke E. Farrow's ("Plaintiff") employment as a waiter at various restaurants owned and operated by Ammari of Louisiana, Ltd. ("Defendant"). Farrow filed this suit on behalf of herself and all others similarly situated under the Fair Labor Standards Act ("FLSA") and various state laws for, among other things, unpaid minimum wages, overtime wages, and tips. Rec. Doc. 1 at ¶¶ 2, 5, 9. She claims that Defendant willfully violated the FLSA's minimum wage provisions by failing to keep accurate records of hours and tips, not informing employees in advance that a tip credit would be applied, and not permitting employees to retain all of the tips they received. *Id*. at ¶ 11. Further, Plaintiff alleges that Defendant improperly calculated her and other employees' overtime pay rate and that Defendant had a policy of unlawfully deducting wages for mistakes and customer walkouts. *Id*. at ¶¶ 30-42. Plaintiff claims that approximately fifty other current and former waiters suffered from the same unlawful conduct; she consequently sought conditional certification of a collective action. *Id*. at ¶ 10; Rec. Doc. 11-1 at 2-5.

On May 25, 2016, this Court denied conditional class certification because Plaintiff's allegations that Defendant's practices "applied uniformly to all tips and waiters in all restaurants," were supported only by Plaintiff's personal paystubs from one of Defendant's restaurants. Rec. Doc. 23 at 6. In other words, Plaintiff "failed to identify any other potential plaintiffs, failed to obtain affidavits from any potential plaintiffs, and failed to provide evidentiary support for the existence of a widespread plan or policy." *Id.* at 7.

On April 10, 2017, two former employees consented to join the litigation. Rec. Docs. 42-43. On May 19, 2017, four more individuals filed notices to opt-in. Rec. Docs. 70-73. Accordingly, Plaintiff re-urged her motion for class certification. Rec. Doc. 97. That motion is set for submission on July 5, 2017. *Id.*

## II.   DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Without admitting to a violation of the FLSA, Defendant maintains that any alleged violation was not committed willfully and therefore that Plaintiff's claims are subject to a two-year statute of limitations. Rec. Doc. 46 at 1.

Plaintiff responds that "Defendant is willful because it knew or recklessly turned a blind eye to a policy implemented in the company that required employees to clock off to avoid paying

overtime and still required the employees to continue working off the clock without pay." Rec. Doc. 86 at 2.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent

summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

> Under the FLSA, any action
>
> for unpaid minimum wages, unpaid overtime compensation, or liquidated damages . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . .

29 U.S.C. § 255(a); *see also* § 256 (which provides that a collective or class action commences under the FLSA when the complaint is filed if the person is named as a party plaintiff in the complaint or "on the subsequent date on which such written consent is filed in the court in which the action was commenced"). Plaintiff bears the burden of demonstrating willfulness by showing that an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016) (citing *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009); *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990)) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "For example, employers act

willfully when they know their pay structures violate the FLSA or ignore complaints brought to their attention." *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015) (citations omitted). A violation is not necessarily willful simply because it was negligent or unreasonable. *Id.* (citing *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990)); *see also Mohammadi*, 605 F. App'x at 332 ("For example, an employer that acts without a reasonable basis for believing that it was complying with the FLSA is merely negligent, as is an employer that, without prior notice of an alleged violation, fails to seek legal advice regarding its payment practices") (citations, alterations, and quotation marks omitted). To that end, "[m]ere knowledge of the FLSA and its potential applicability does not suffice . . . ." *Zannikos v. Oil Inspectors (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015) (citations omitted); *see also Chicca v. St. Luke's Episcopal Health Sys.*, 858 F. Supp. 2d 777, 791 (S.D. Tex. 2012) ("The only basis for Chicca's claim of willfulness is that Defendant knew about the FLSA, knew of Plaintiff's job responsibilities, and improperly classified him. Such a charge is not enough to show willfulness.").

Here, Defendant propounded the following interrogatory on Plaintiff:

> Identify each and every fact that supports your
> allegation that Defendant's failure to pay minimum wage

6

and overtime compensation was arbitrary, willful, intentional and/or not in good faith.

Rec. Doc. 46-8 at 7. Plaintiff responded "See Complaint §§11-13." *Id.* Paragraph 11 of the complaint merely alleges, in a conclusory fashion, that Defendant "intentionally, willfully, and repeatedly harmed plaintiff and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA and committing conversion of their tips." Rec. Doc. 1 at ¶ 11. Paragraphs 12 and 13 are wholly irrelevant to this issue.

Further, during Plaintiff's deposition, the following exchange took place:

> Q. Okay. You claim that defendant has intentionally and willfully violated the F.L.S.A. What are you basing that allegation on?
> A. What is the F.L.S.A.?
> Q. . . . Let me ask it differently . . . You claim that they intentionally failed to pay you minimum wage.
> . . .
> Q. And what do you base that on?
> . . .
> A. Mainly they had been paying minimum wage correctly and then that stopped.
> . . .
> A. We received paper pay stubs . . . every week. . . . They went to electronic pay stubs and that's when I noticed that I was no longer being paid minimum wage.
> . . .
> Q. And what [was] the difference between the two pay stubs?
> A. The paper pay stubs [were] five dollars and change. The electronic [were] three dollars and change.
> Q. In overtime.
> A. For overtime, yes.
> Q. So not for the regular rate of pay.
> A. No. They continued to pay me 2.13.
> . . .
> Q. So what makes you think it was intentional?

A. The fact that I just don't see how you could go from paying the correct amount to not paying the correct amount when nothing should have changed in my opinion.
Q. Okay. Is it fair to say that it could have been a mistake?
A. That is possible.
Q. Okay. Did anyone ever tell you, "We're intentionally changing the overtime rate"?
A. No.
Q. Do you have any person you could point to, any witness that would say, "Yes, I think it was also intentional"?
A. No.

Rec. Doc. 46-4 at 4-7.[1]

Plaintiff responds that "this line of questioning was only as to the overtime pay rate and Farrow never testified that the policy to clock an employee off and have the employee complete the work unpaid, was unintentional." Rec. Doc. 86 at 5.

Additionally, Plaintiff produces the declarations of Matthew Hunter, Judah Nero, and Dishea Brown. Hunter, employed as a waiter and manager, stated that Defendant "did not want waiters to work more than 40 hours during slow months. [Defendant] instructed Managers to clock waiters off the time clock and have them complete side work off the clock. As a manager, I would instruct waiters to clock off . . . and . . . complete side work off the clock." Rec. Doc. 86-2 at ¶¶ 3-5. Nero similarly testified that "[m]anagers would instruct waiters to clock off the time clock and to complete

---

[1] Defendant also notes that it attempted to comply with the FLSA by providing notice of the "tip credit" in the employee handbook (Rec. Doc. 46-5 at 18-19) and having Plaintiff sign an "Acknowledgement of Receipt of Handbook and Certificate of Understanding" (Rec. Doc. 46-7) and a "Notice to Tipped Employees" signed by Plaintiff (Rec. Doc. 46-6).

side work off the clock" and that "[m]anagers would also shift time worked from one week into another week to avoid overtime pay." Rec. Doc. 86-3 at ¶¶ 4-5. Further, Brown, who worked as a hostess, testified that "[m]anagers would instruct me to clock off the time clock so I would not go over 40 hours but to still continue working until the next person scheduled relieved me." Rec. Doc. 86-4 at ¶ 4.[2]

Plaintiff also suggests that Defendant was notified of FLSA violations by the filing of two separate lawsuits against it in this Court in 2013. *See Charles Trammell, et al. v. Ammari of Louisiana, LTD. et al.*, CV-13-4583, Section "I"(5); *Monika Scarborough, et al. v. Ammari of Louisiana, Ltd., et al.*, CV-13-6196, Section "A"(4). The *Trammell* complaint alleged that the plaintiffs routinely worked more than forty hours per week without being paid overtime, were not paid the federally-mandated minimum wage, and that the general manager "took care to avoid scheduling any Plaintiff . . . to work more than 40 hours at one location, although he routinely scheduled Plaintiffs . . . to work more than 40 hours total for all Defendants." Rec. Doc. 1 at ¶¶ 15-16, 49. The *Scarborough* complaint similarly alleged that the plaintiffs

---

[2] Plaintiff also cites to a portion of her deposition testimony in which she purportedly stated she worked off the clock to avoid overtime pay when asked by managers to clock out, she never refused to clock out because she believed Defendant would cut hours one way or another, and that she did not voluntarily clock out to do side work. Rec. Doc. 86 at 3-5. However, this portion of Plaintiff's deposition testimony is not in the record. Plaintiff did not attach it to her response memorandum and, after searching every exhibit filed into the record as of June 20, 2017, the Court was unable to locate it.

were required to work in excess of forty hours per week and were
not properly compensated for that overtime work. Rec. Doc. 1 at ¶¶
59-60.

Plaintiff asks that this Court take judicial notice of certain
declarations filed in *Trammell*. Rec. Doc. 86 at 7. The Fifth
Circuit has stated that "it is not error 'for a court to take
judicial notice of related proceedings and records in cases before
that court.'" *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277
n.33 (5th Cir. 1978) (finding that it was not error for the
district court to take judicial notice of depositions and materials
filed in earlier litigation between different parties where the
party that did not request such judicial notice had the opportunity
to submit its own evidence and interrogate those parties whose
depositions were part of the prior proceeding's records) (quoting
*State of Fla. Bd. of Trustees of Internal Imp. Trust Fund v.*
*Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975))
(other citations omitted); *see also Davis v. Bayless*, 70 F.3d 367,
372 n.3 (5th Cir. 1995) (finding that it was not error for the
district court to take judicial notice of state court orders that
were filed into the public record when ruling on a motion to
dismiss under Federal Rule of Civil Procedure 12(b)(6)).

The first *Trammell* declaration cited to by Plaintiff was filed
by Kristy Smith. CV-13-4583, Rec. Doc. 33-3. Plaintiff cites to a
particular portion of the declaration in which Smith states that

"Defendants often failed to pay me overtime for hours worked in excess of 40 per week, even when I worked more than 40 hours per week in one location." *Id.* at ¶ 27. The second declaration was filed by Joshua Holsted, who stated "I routinely worked for Defendants for more than 40 hours per week, but was not paid overtime." Rec. Doc. 33-4 at ¶ 23.

Based on this evidence, Plaintiff insists that "Defendant had notice in 2013 of two complaints that their company-wide policy violated the FLSA and still continued to utilize the policy as late as 2017 . . . ." Rec. Doc. 86 at 8 (citing *Ramos v. Al-Bataineh*, 599 F. App'x 548, 549 (5th Cir. 2015) (where an employee worked more than ninety hours per week during her 18-year employment, was paid roughly $400 each week in cash, maintained detailed records of her hours and compensation, but her employer maintained no records, the district court determined that the employer willfully violated the FLSA after a bench trial; the Fifth Circuit held that the district court did not clearly err in making this determination because the employer was aware of the FLSA and its requirements and his argument that he was unaware that the employee worked more than forty hours per week was refuted by the record, such that when "an employer whose employee works over 90 hours per week chooses neither to keep records of their employee's time nor acknowledge their employee's presence for those extended hours, that employer can easily be said to have disregarded the

possibility of violating the FLSA . . . especially [where the employer] is attempting to turn a blind eye to the egregiously disproportionate ratio between the hours [the employee] worked and the wages she was paid").

In its reply memorandum, Defendant argues that Plaintiff did not assert during her deposition or in her complaint that her claim for a willful violation of the FLSA was based on working off the clock. Rec. Doc. 96 at 1. Accordingly, Defendant "concedes that a factual issue now exists as it relates to the 'off the clock' work claim and whether managers were actually advised to 'clock waiters off the time clock,'" but maintains that Plaintiff "fail[s] to come forth with any evidence to show reckless disregard of the FLSA as it relates to any other cause of action asserted in the Complaint." *Id.* at 2. In other words, "[e]ach of Plaintiffs' claims – except for this newly asserted 'off the clock' work claim – should be limited to the two-year statute of limitations period." *Id.*[3]

To that end, Defendant insists that the complaints in *Trammell* and *Scarborough* did not provide notice to Defendant of a "company-wide policy violat[ing] the FLSA," because (1) neither action entered a judgment against Defendant finding that Defendant

---

[3] Defendant insists that this two-year limitations period applies to Plaintiff's claims of "unlawful deductions, failure to pay the correct overtime rate, failure to maintain accurate records of hours worked and tips received, deprivation of tips earned, failure to provide advance notice of the tip credit, and failure to pay the minimum wage." Rec. Doc. 96 at 3.

violated the FLSA; (2) the *Trammell* complaint did not allege that employees were required to work off the clock; and (3) the *Scarborough* complaint served on Defendant on December 11, 2013 was the first notice Defendant received of these off-the-clock claims and improper overtime rates and that these mistakes were "rectified months prior and contradict[] any allegation that [Defendant] willfully *continued* paying an improper overtime rate." Rec. Doc. 96 at 4-5 (emphasis in original). At most, Defendant insists that the existence of these suits merely show that Defendant was aware of the FLSA. *Id.* at 5.

Nonetheless, even if those suits were sufficient to provide some notice, Defendant argues that Plaintiff has "not presented any evidence of a *continued* FLSA violation or reckless disregard of the FLSA *after* the filing of *Trammel[l]*, *Scarborough*, and the present lawsuit, other than this 'off the clock' work which [Defendant] already concedes should be outside the scope of this motion." Rec. Doc. 96 at 5-6.

Defendant concedes that there is a genuine issue of material fact regarding whether or not Defendant willfully violated the FLSA by requiring Plaintiffs to work off the clock. These claims are directly related to Plaintiff's cause of action for unpaid overtime wages. Hunter, Nero, and Brown stated that they were required to work off the clock so Defendant would not have to pay overtime. Rec. Docs. 86-2 at ¶¶ 3-5; 86-3 at ¶¶ 3-5; 86-4 at ¶ 4.

To that end, Plaintiff also produced evidence that Defendant was put on notice in 2013 that certain employees believed they were not being properly compensated for overtime work. *See Trammell*, CV-13-4583, Rec. Doc. 1 at ¶¶ 15-16. Even though these were unsupported allegations made in a complaint and therefore not competent summary judgment evidence, they were nevertheless arguably sufficient to put Defendant on notice of a possible violation of the FLSA's overtime provisions. Plus, these allegations were subsequently supported by declarations. CV-13-4583, Rec. Docs. 33-3 at ¶ 27; 33-4 at ¶ 23. Plaintiff then produced evidence that employees opting-in to this litigation claimed that they were forced to work off the clock to avoid overtime pay. Because Defendant was notified by employees in 2013 that they believed Defendant's practices violated the FLSA's overtime provisions and there are recent declarations from employees claiming that they were not properly compensated for overtime work, there is some evidence that Defendant ignored complaints brought to its attention. *Mohammadi*, 605 F. App'x at 332. This may mean that Defendant showed reckless disregard for whether or not its conduct was prohibited by law. Thus, there is sufficient evidence to create a genuine issue of material fact regarding whether or not Defendant willfully violated the FLSA's overtime provisions.

However, Plaintiff presented no evidence to suggest that Defendant willfully made unlawful deductions, failed to maintain

records of the tips received, deprived employees of tips earned, failed to provide advance notice of the tip credit, or failed to pay minimum wage.

The statute provides different limitations periods for actions for unpaid minimum wages, unpaid overtime wages, or liquidated damages if the plaintiff can prove a willful violation. Plaintiff presented no evidence that Defendant willfully violated the FLSA's minimum wage provisions. Even though the *Trammell* complaint included an allegation that Defendant violated these provisions, Plaintiff did not produce evidence to suggest that Defendant failed to pay minimum wages to Plaintiff or other employees opting-in to this litigation or to otherwise suggest that Defendant ignored the minimum wage complaints raised in *Trammell*. Thus, Defendant is entitled to summary judgment finding that Plaintiff's cause of action for unpaid minimum wages is subject to the two-year statute of limitations.

### III. **PLAINTIFF'S MOTION TO EQUITABLY TOLL**

Plaintiff argues that class certification was denied without prejudice, putative members may join even when there is no motion to certify pending,[4] and that "extraordinary circumstances" caused

---

[4] In her motion, Plaintiff asserted that a motion to certify would be filed by May 9, 2017. Rec. Doc. 47-1 at 2. Plaintiff then stated in her reply brief, filed on May 22, 2017, that she intended to file a renewed motion for class certification "upon receipt of additional declarations in support of the motion as several witnesses have come forward to identify policies in violation of [the] FLSA." Rec. Doc. 78 at 1. The motion was ultimately filed on June 19, 2017. Rec. Doc. 97.

delays, but the statute of limitations continues to run against potential class members. Rec. Doc. 47 at 1-2. Specifically, on March 8, 2017, Magistrate Judge Daniel Knowles granted Plaintiff's motion to compel responses to Interrogatory Number 11, which requested Defendant to identify and provide last known mailing addresses and telephone numbers for current and former employees "whose duties were similar to those performed by Plaintiff who were compensated in a manner similar to Plaintiff for the last three years preceding the filing of the lawsuit." Rec. Docs. 39 at 1; 31-1 at 5. Judge Knowles reasoned that the information was "relevant to both her individual claim (as potential corroboration of the restaurants at which plaintiff worked) and to the potential certification of a class, should plaintiff re-file her motion." Rec. Doc. 39 at 1. When this motion was filed on April 30, 2017, Plaintiff insisted that Defendant had failed to comply with that ruling. Rec. Doc. 47-1 at 2. Accordingly, at the same time Plaintiff filed the instant motion, she filed a motion to enforce the Magistrate Judge's order and for sanctions. *See* Rec. Docs. 49, 57.[5] Magistrate Judge Knowles heard oral arguments on the motion on May 24, 2017, taking the matter under advisement and ordering the parties to confer within fourteen days to discuss the outstanding discovery issues. Rec. Doc. 82. On June 7, 2017, Judge

---

[5] The original motion (Rec. Doc. 49) was filed on the same day as the instant motion, April 30, 2017, but was marked deficient. Plaintiff subsequently re-filed the motion, curing the noted deficiency, on May 3, 2017. Rec. Doc. 57.

Knowles issued an Order recognizing that the motion had been satisfied. Rec. Doc. 94.

Under the FLSA, the statute of limitations generally runs from the date that the complaint is filed. 29 U.S.C. § 256. However, for a collective or class action filed under the FLSA, the action

> shall be considered to be commenced in the case of any individual claimant
> (a)  on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
> (b)  if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

*Id. See also Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983) (noting that § 256 "requires class plaintiffs to opt in, and limitations runs from the opt-in date") (citations omitted). "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (citing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965)). The party requesting equitable tolling bears the burden of proof. *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (citation omitted). It applies in "rare and exceptional circumstances," generally "where 'the plaintiff is actively misled by the defendant about the cause of action or is

17

prevented in some extraordinary way from asserting his rights.'" *Id.* (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000)). However, it may also be applied "when, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim." *Pacheco v. Rice*, 966 F.2d 904, 906-07 (5th Cir. 1992) (citations omitted); *see also Castillo v. Hernandez*, No. 10-247, 2010 WL 4595811, at *8 (W.D. Tex. Nov. 4, 2010). The Supreme Court previously outlined various situations in which limitations periods were equitably tolled, including where a claimant received inadequate notice, there was a pending motion to appoint counsel, the court led the plaintiff to believe that she did not need to do anything more, or where the defendant's affirmative misconduct "lulled the plaintiff into inaction." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (citations omitted).

Plaintiff argues that Defendant delayed compliance with the Magistrate Judge's order "in order to file a motion for summary judgment on disputed facts that the withheld evidence would prove." Rec. Doc. 47-1 at 4. Indeed, five days before Plaintiff filed the instant motion, Defendant filed the motion for partial summary judgment discussed above. Rec. Doc. 46. According to Plaintiff, documents that Defendant should have produced "could support a

finding of 'willfulness' which in turn expands the statute of limitations from 2 years to 3 years." Rec. Doc. 47-1 at 5.[6]

Defendant responds that Plaintiff failed to cite to any case "that warrants tolling based on a seven-week delay in producing discovery responses due to various circumstances that substantially justified the delay." Rec. Doc. 67 at 2.[7] Further, Defendant maintains that Plaintiff "identified no less than six potential witnesses during her deposition" who could arguably dispute Defendant's pending motion for partial summary judgment. *Id.* Defendant believes that Plaintiff only propounded Interrogatory Number 11 because she wanted to solicit potential class members. *Id.* at 3. Finally, Defendant avers that "Plaintiffs' argument rings hollow when considered with the fact that Plaintiffs' counsel chose not to seek discovery ***before*** filing for conditional certification in April 2016 and then not until ***nine months after*** filing this lawsuit and ***four months after*** certification was denied." *Id.* at 4 (emphasis in original). Plaintiff responds to this specific allegation by noting that after

---

[6] Plaintiff also argues that Defendant previously stated that it intended to appeal the discovery ruling. Rec. Doc. 47-1 at 5; *see also* Rec. Doc. 47-2 at 2 (in which defense counsel informed Plaintiff's counsel that they were "considering appealing the discovery order and will give proper notice if we do so").

[7] In support, Defendant cites to its memorandum opposing Plaintiff's motion to enforce and for sanctions. *See* Rec. Doc. 66. It later explains in its response to the instant motion that "the delay was caused, in part, by the laborious process of searching both electronic and paper records for information that was jeopardized after Ammari's computer system crashed more than two years ago." Rec. Doc. 67 at 4 (citing Rec. Doc. 66 at 7).

Rule 26 disclosures were exchanged in April of 2016, Defendant propounded its first set of discovery at the end of June; within a month after responding to Defendant's discovery, Plaintiff propounded the discovery at issue. Rec. Doc. 78 at 3.

Plaintiff has failed to satisfy her burden of proving that this is a "rare and exceptional" case in which the opt-in or potential plaintiffs were "prevented in some extraordinary way from asserting [their] rights." *Teemac*, 298 F.3d at 457. Plaintiff does not explain how Defendant's failure to timely respond to an interrogatory prevented any potential plaintiff from asserting his or her rights or discovering information essential to his or her claim. She does suggest that the failure to timely respond prevented her from gathering evidence to respond to Defendant's motion for partial summary judgment, but Plaintiff supported her response to that motion with declarations and evidence from earlier litigation. Plus, Judge Knowles ruled on June 7, 2017 that Defendant had responded to the interrogatory and Plaintiff has not moved, in the three weeks since that time, to supplement her response to Defendant's motion for partial summary judgment. Further, Plaintiff had already commenced her action under the FLSA by filing the complaint as a named plaintiff—meaning that, if she bears her burden of proof at trial, she will be entitled to any unpaid wages due for the two or three years preceding the filing of the complaint.

If anything, it appears to the Court that Plaintiff is suggesting that Defendant's failure to timely respond to the interrogatory prevented her from notifying other employees who may have claims. However, Plaintiff also insists in response to Defendant's motion for a protective order, discussed below, that the interrogatory was designed to locate witnesses, not claimants. In any event, there is no evidence that, by failing to timely respond to the interrogatory, Defendant induced potential plaintiffs to delay filing a complaint or opt-in notice. If the potential plaintiffs were told to clock-out and continue working without pay, as Plaintiff alleges, a reasonable exercise of due diligence would have alerted them to the fact that they were not being properly compensated. *See, e.g. Sandoz v. Cingular Wireless, L.L.C.*, 675 F. App'x 498 (5th Cir. 2017) (in section II(A), the Fifth Circuit explains that employees could have discovered that their effective wage fell below the minimum wage and accordingly filed suit, such that tolling was inappropriate).

## IV. <u>DEFENDANT'S MOTION FOR A PROTECTIVE ORDER</u>

Defendant asks that communications with potential opt-in plaintiffs be permitted to proceed only pursuant to a notice procedure approved by the Court. Rec. Doc. 61 at 1.

Pursuant to Local Rule 83.2.3, this Court uses Louisiana's Rules of Professional Conduct. Rule 7.4(a) provides that "a lawyer shall not solicit professional employment from a prospective

21

client . . . in person, by person to person verbal telephone contact, through others acting . . . on the lawyer's behalf . . . when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." It is similar to Rule 7.3 of the Model Rules of Professional Conduct and the comments to that rule explain that such contact creates a potential for abuse because "[t]he person, who may already feel overwhelmed . . . may find it difficult fully to evaluate [sic] all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon being retained immediately."

For similar reasons, the United States Supreme Court recognized that trial courts have "a substantial interest in communications that are mailed for single actions involving multiple parties." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). "Indeed, because of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, 'a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.'" *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)); *see also Vogt v. Tex. Instruments Inc.*, No. 05-2244, 2006 WL 4660133, at *2 (N.D. Tex. Aug. 8, 2006) (noting that this same duty and broad authority exists in collective actions brought under

22

the FLSA pursuant to 29 U.S.C. § 216(b)). This "managerial responsibility begins once the collective action is filed, before the court conditionally certifies the class or authorizes a section 216(b) notice." *Vogt*, 2006 WL 4660133, at *2 (citation omitted).

While trial courts have broad authority to manage FLSA collective actions, the parties' First Amendment rights require any restrictions on speech to be narrowly-tailored. *See Bernard*, 452 U.S. at 103-04 ("Although we do not decide what standards are mandated by the First Amendment in this kind of case, we do observe that the order involved serious restraints on expression. This fact, at minimum, counsels caution on the part of a district court in drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses"). Accordingly, a district court may not restrict communications "without a specific record showing by the moving party of the particular abuses by which it is threatened." *Id*. at 102 (quoting *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977); *see also Vogt*, 2006 WL 4660133, at *3 (noting that "[w]hile actual harm need not be proved to justify an order limiting class contacts, the movant must at least present evidence that a potential likelihood for serious abuse exists") (citations omitted). In light of these concerns, courts have chosen to restrain communications in limited situations, such as when "the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to

join the suit." *Belt*, 299 F. Supp. 2d at 667-68 (citations omitted).

On May 9, 2017, Defendant learned that Plaintiff's counsel was communicating with Defendant's employees. Rec. Doc. 61-1 at 2.[8] Defendant supplied a May 5, 2017 letter from Plaintiff's counsel addressed to one of Defendant's employees, along with an affidavit by one of Defendant's employees recognizing that current and former employees had been contacted by Plaintiff's counsel. *See* Rec. Doc. 61-2. The letter from Plaintiff's counsel provided, in full:

> We represent former employee of Pier 424 and Creole Cuisine, Liz Farrow, Mathew Hunter and Judah Nero. You have been identified as an employee of Creole Cuisine who may have also not received correct payment for wages and overtime during your employment. We are looking for potential witnesses and time is of the essence.[9] We would appreciate if you would contact us to discuss this matter. Thank you.

*Id.* at 3. Defendant insists that this communication is both improper solicitation and misleading. Rec. Doc. 61-1 at 4. According to Defendant, Plaintiff allegedly requested employee

---

[8] As previously discussed, Plaintiff requested the names and contact information for employees similarly situated to Plaintiff. *See* Rec. Doc. 31-1 at 3 (Plaintiff's motion to compel discovery responses). On March 8, 2017, Magistrate Judge Knowles granted Plaintiff's motion to compel in part, ordering Defendant to supply the requested information. Rec. Doc. 39. Again, the order stated that "the information that plaintiff seeks is relevant to both her individual claim (as potential corroboration of the restaurants at which plaintiff worked) and to the potential certification of a class, should plaintiff re-file her motion." *Id.* at 1. Accordingly, Defendant produced the required information on May 4, 2017. *See* Rec. Doc. 61-1 at 2. The letter addressed to Defendant's employees was dated the following day, May 5, 2017. Rec. Doc. 61-2 at 3.
[9] When the communication was sent, trial was scheduled to commence on June 19, 2017. *See* Rec. Doc. 65.

contact information for the purposes of identifying witnesses, but the letter sent by Plaintiff's counsel suggests improper solicitation because it states that the recipient was "identified" as someone who "may have also not received correct payment for wages and overtime during your employment." *Id.* (citing Rec. Docs. 31-1 at 2-3; 61-2 at 3). Defendant argues that this implies that it "identified these individuals as employees who were not properly paid." *Id.* at 5. It also suggests that Plaintiff's counsel has reason to believe that the recipient was not properly paid and that Plaintiff has already proven that Farrow, Hunter, and Nero were not properly paid. *Id.* at 5-6.

Plaintiff responds that the communication did not contain solicitation language and that, instead, the letter was intended to find witnesses. Rec. Doc. 80 at 1-2. Plaintiff specifically directs this Court to a formal opinion issued by the ABA Committee on Ethics and Professional Responsibility, which provided the following insight:

> Both plaintiffs' counsel and defense counsel have legitimate need to reach out to potential class members regarding the facts that are the subject of the potential class action, including information that may be relevant to whether or not a class should be certified. With respect to such contacts, Rule 4.3, which concerns lawyers dealing with unrepresented persons, does not limit factual inquiries but requires both sides to refrain from giving legal advice other than advice to engage counsel, if warranted. If, on the other hand, plaintiffs' counsel's goal is to seek to represent the putative class member directly as a named party to the action or otherwise, the provisions of Rule 7.3, which

> governs the lawyers' direct contact with prospective
> clients, applies. The fact that an action has been filed
> as a class action does not affect the policies underlying
> Rule 7.3 that prohibit the types of contact with
> prospective clients that have serious potential for
> overreaching and other abuse. However, Rule 7.3's
> restrictions do not apply to contacting potential class
> members as witnesses, so long as those contacts are
> appropriate and comport with the Model Rules.

ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 07-445, at
5-6 (2007).

Plaintiff further notes that she reurged her motion to certify
a collective action and that the motion requests appropriate notice
to be issued pursuant to the relevant rules. Rec. Doc. 80 at 3;
*see also* Rec. Doc. 97 (the pending motion to certify a collective
action).

In its reply memorandum, Defendant insists that the letter
was intended to solicit clients and that "not coincidentally, four
new Plaintiffs opted into the case days after counsel's
solicitation." Rec. Doc. 85 at 1-2 (citing Rec. Docs. 70-73).
Further, Defendant notes that Plaintiff has not supplemented her
witness list with new fact witnesses. *Id.* Thus, Defendant requests
that Plaintiff's and her counsel's communications with Defendant's
current and former employees be limited to the notice procedure.
*Id.* at 3.

In *Vogt*, relied on by Defendant, the court considered three
communications sent by plaintiffs to various employees:  (1) the
named plaintiff sent a flyer; (2) an opt-in plaintiff sent an

email; and (3) plaintiffs' counsel sent an advertisement. 2006 WL 4660133, at *1. The employer requested a temporary restraining order to prevent the plaintiffs from sending any other communication to past or present employees without court authorization. *Id.* at *2. The court recognized that "[f]ew courts have addressed how communications initiated by plaintiffs or their counsel to potential class members should be regulated during the interim period after suit has been filed, but before the court conditionally certifies a collective action or authorizes a notification pursuant to section 216(b)." *Id.* at *3. Nonetheless, it determined that "[s]ince court-authorized notification is discretionary, and potential class members are not included as party plaintiffs in the collective action unless they affirmatively opt-in, courts should not *per se* prohibit precertification communications . . . ." *Id.*

The court then determined that the flyer, which contained a formula for the recipient to calculate "the amount of unpaid overtime that you are owed," was misleading; the court therefore prohibited further distribution. *Id.* at *4-5. The email, which stated that if they won, and there was precedent from a case last year, they would be paid monies owed, was also misleading. *Id.* at *6. Thus, the court prohibited plaintiffs from forwarding the email. *Id.* The advertisement, which contained the word "ADVERTISEMENT" on the first page, was modeled after a section

216(b) notice previously approved by the court in unrelated litigation. *Id.* at *7. The court found that the advertisement was not misleading or coercive. *Id.* at *9-10. Nor did it undermine the collective action, because it was sent before the court conditionally certified the class, it was only delivered to 166 employees where the proposed class consisted of 5,000 employees, and because plaintiff's counsel enjoyed certain commercial speech rights. *Id.* at *10-11. At most, it was an attempt to solicit potential class members to opt-in to the collective action. *Id.* at *9.

Here, the letter sent by Plaintiff's counsel is misleading. However, it was not so egregious to warrant a ban on all communications, except those approved by the Court, between Plaintiff's counsel and potential plaintiffs. After all, Plaintiff has a right to gather evidence from potential witnesses. Plus, a motion to certify a collective action is currently pending before this Court and set for submission on July 5, 2017. Rec. Doc. 97. If the Court grants that motion, an approved notice will be available to potential plaintiffs.

Nonetheless, Plaintiff's counsel may not continue to use the letter at issue. Future communications between Plaintiff's counsel and potential plaintiffs should not imply that this Court has found that Plaintiffs were not properly compensated or that Defendant identified certain employees as individuals who may not have been

properly compensated. Further, Defendant also alleged that Plaintiff's counsel made inappropriate phone calls to Defendant's employees. To that end, Plaintiff's counsel is reminded of her ethical obligations under Rule 7.4.

### V.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's motion (Rec. Doc. 46) is **GRANTED IN PART**. Named Plaintiff Rieneke E. Farrow filed the complaint and her consent to sue on December 29, 2015. Rec. Doc. 1. Judah Nero and Matthew Hunter did not file their consent forms until April 10, 2017. Rec. Docs. 42-43. Shameka Brown, Tevin Butler, Mia Johnson, and Alphonse Honore did not file their consent forms until May 19, 2017. Rec. Docs. 70-73. Accordingly, Plaintiffs' claims for unpaid minimum wages are limited to the two-year period immediately preceding those dates.

**IT IS FURTHER ORDERED** that Plaintiff's motion to equitably toll the statute of limitations (Rec. Doc. 47) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for a protective order (Rec. Doc. 61) is **GRANTED IN PART**. Plaintiff's counsel may not continue to use the letter attached to Defendant's motion or any other communications that could be construed as misleading, coercive, or as an attempt to undermine the collective action. However, the Court does not grant Defendant's motion insofar as it seeks to prohibit all communications between Plaintiff's counsel

and Defendant's employees. To that end, Plaintiff shall submit a revised letter and/or other forms of communication to potential claimants for Defendant's review within seven (7) days of the date of this Order. Within seven (7) days after receipt of the same, Defendant shall confer with Plaintiff to resolve any objections to the proposed communication. Thereafter, either party may seek judicial relief on remaining issues, provided that compliance with local rules and orders is achieved beforehand.

New Orleans, Louisiana, this 29th day of June, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE